[No. 76950-8.   En Banc.]
Argued March 14, 2006.   Decided January 25, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. HARRY WILLIAM O'NEAL ET AL., *Petitioners*.

*Peter B. Tiller* (of *The Tiller Law Firm*); *Rebecca W. Bouchey*; and *Stephanie C. Cunningham*, for petitioners.

*Edward G. Holm, Prosecuting Attorney*, and *James C. Powers, Deputy*, for respondent.

¶1 CHAMBERS, J. — We heard this case as a companion to *State v. Eckenrode*, 159 Wn.2d 489, 150 P.3d 1116 (2007) and *State v. Easterlin*, 159 Wn.2d 203, 149 P.3d 366 (2006) in order to address, again, when a defendant is "armed" for the purposes of a deadly weapons enhancement under the "Hard Time for Armed Crime Act" of 1995. LAWS OF 1995, ch. 129, § 1(1)(a) (Initiative Measure No. 159).

¶2 Harry, Jesse, and Greg O'Neal[1] all received firearms enhancements on a variety of drug charges. At the time of arrest, none of these men were holding weapons. Having reviewed the record, we conclude that there was sufficient evidence to uphold the jury's determination that these men were armed while committing crimes. Accordingly, we affirm imposition of the sentencing enhancements.

## FACTS

¶3 Authorities received a tip that a mobile home owned by Michelle O'Neal in rural Thurston County might be the site of methamphetamine manufacture. A warrant was executed one December morning in 2001.

¶4 Michelle's son, Greg, was making the house payments on the home at the time. He and his childhood friend, Jason Shero (who later testified against the O'Neals in return for a plea bargain), were living there. While there was some conflicting testimony, there was evidence that Greg's brother,

---

[1] Because many of the participants in this case share a last name, we will refer to them by their given names. No disrespect is intended.

Jesse, and their father, Harry (Michelle's ex-husband), also lived in the house.

¶5 The officers found considerable evidence of drug use and manufacturing and seized more than 20 guns (along with body armor, a police scanner, and night vision goggles) from the O'Neal home. Most of the weapons were in two gun safes: one locked, one unlocked. A loaded AR-15 rifle (a civilian version of the military M16)[2] was found in one bedroom and a loaded semiautomatic pistol was found under a mattress in a different bedroom that at least two members of the household slept in from time to time.

¶6 Superior Court Judge Daniel J. Berschauer denied several motions to strike the firearms enhancements, largely because he concluded there was sufficient evidence for a jury to find that at least one of the participants in the criminal activities was armed in the furtherance of the manufacture of drugs, and that the other defendants could be considered armed under an accomplice theory.

¶7 The cases were consolidated and tried to a jury. Ultimately, Jesse and Harry were each convicted of one count of manufacturing methamphetamine with a firearms enhancement. Greg was convicted of manufacturing methamphetamine and marijuana, each with a firearms enhancement, 20 counts of unlawful possession of a firearm in the first degree, and of unlawful possession of a machine gun.

¶8 The O'Neals brought numerous challenges, all but two of which were rejected by the Court of Appeals. *State v. O'Neal,* 126 Wn. App. 395, 403, 109 P.3d 429 (2005). We granted review limited to whether the defendants were "armed." *State v. O'Neal,* 155 Wn.2d 1024, 126 P.3d 820 (2005).

## ANALYSIS

■■ ¶9 "A defendant is 'armed' when he or she is within proximity of an easily and readily available deadly

---

[2] Per http://en.wikipedia.org/wiki/AR-15 (last visited Jan. 23, 2007). An unloaded AR-15 was also found in a different closet.

weapon for offensive or defensive purposes and when a nexus is established between the defendant, the weapon, and the crime." *State v. Schelin*, 147 Wn.2d 562, 575-76, 55 P.3d 632 (2002). Since the defendants did not challenge the jury instructions at trial, we limit our inquiry to whether there was sufficient evidence for any rational trier of fact to find beyond a reasonable doubt that one or more of the defendants were armed.[3] *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

¶10 The O'Neals challenge whether the State proved, beyond a reasonable doubt, that they were armed at the time of arrest because the State did not show that the weapons were easily accessible and readily available at a specific moment in time, such as the time of arrest. The defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement. *E.g., Schelin*, 147 Wn.2d at 572-73, 575; *cf. State v. Gurske*, 155 Wn.2d 134, 138-39, 118 P.3d 333 (2005) (noting the State had not submitted evidence showing the defendant had a weapon easily accessible and readily available at any point during the commission of his crime). Instead, the State's theory was that the AR-15 leaning against a wall and the pistol under a mattress were easily accessible and readily available to protect the continuing drug production operation on or around December 4, 2001. *Cf. Schelin*, 147 Wn.2d at 572-73 (rejecting the argument that the State must prove that the defendant was armed at the time of arrest). We agree that this is an appropriate theory to present to the jury, and that the State need not establish with mathematical precision the specific time and place

---

[3] While the defendants have challenged the special verdict instructions on review, we find that any error was not preserved and do not address their arguments. *See State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005); *State v. Willis*, 153 Wn.2d 366, 374, 103 P.3d 1213 (2005); *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990). Similarly, if they had requested an instruction that used the words "connection" or "nexus," it might well have been appropriate to give it.

that a weapon was readily available and easily accessible, so long as it was at the time of the crime.

¶11 We note that the Court of Appeals specifically rejected a similar sufficiency of the evidence challenge in *State v. Simonson*, 91 Wn. App. 874, 883, 960 P.2d 955 (1998). In *Simonson*, the court upheld the jury's verdict, finding that a jury could infer from the presence of loaded guns at the site of an active methamphetamine manufacturing site that the weapons were there to protect drug production. Judge J. Dean Morgan concluded:

> Taken in the light most favorable to the State, the evidence here shows that [the defendants] were committing a continuing offense, manufacturing methamphetamine, over a six-week period of time. During some or all of that time, they kept seven guns on the premises. It is reasonable to infer that not less than four were kept in a loaded condition . . . . It is also reasonable to infer that the purpose of so many loaded guns was to defend the manufacturing site in case it was attacked. We conclude that the evidence is sufficient to support the deadly weapon enhancement.

*Simonson*, 91 Wn. App. at 883. We agree.

¶12 The defendants also argue that the evidence was insufficient to show a connection, or nexus, between a weapon and their crimes. A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it. *Salinas*, 119 Wn.2d at 201. In this case, the O'Neals' alleged accomplice, Shero, testified that the loaded pistol was under his mattress because "[i]f I needed it, it was there." Verbatim Report of Proceedings (VRP) (July 9, 2002) at 317.[4] He testified that he had kept

---

[4] Shero testified:

Q.  Why did you keep a gun [under your mattress]?

A.  That is where I knew it would be.

Q.  Was it for safety?

A.  It was just—I knew where it—wasn't for anything. I knew the gun was going to be there. If I needed it, it was there. If I didn't need it, I knew it was there.

VRP (July 9, 2002) at 317.

that gun there for more than a year before the police raid. The loaded AR-15 rifle was simply leaning on the wall of an open closet in a bedroom. The gun was owned by Greg, a convicted felon, who was not allowed to own firearms. There was evidence that the gun was readily accessible at least to the accomplice Shero, who pleaded guilty to manufacturing methamphetamine as part of a plea bargain. Shero also testified that he had been helping the O'Neals manufacture drugs for several months and there was evidence that Harry had stood watch during critical points during the methamphetamine production. A jury could infer from this testimony that there were guns readily available and easily accessible to one or more of the accomplices to protect the drug manufacturing operation.[5]

¶13 Direct evidence is not required to uphold a jury's verdict; circumstantial evidence can be sufficient. *Cf. Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 392, 97 P.3d 745 (2004). From the evidence presented, a jury could reasonably infer that the weapons were present to protect the drug manufacturing operation. That is a sufficient connection. *E.g., Gurske*, 155 Wn.2d at 138-39 (quoting LAWS OF 1995, ch. 129, § 1(1)(b) (Initiative Measure No. 159)).

¶14 This case is not like *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993). There, the police found cocaine, evidence of delivery, and an unloaded rifle in the defendant's home. *Id.* at 273, 282. There was no evidence that the gun had any connection to the crime. *Id.* at 282. We vacated the firearms enhancement as the State did not show that the weapon was "accessible and readily available

---

[5] Harry also argues that the State did not prove he knew anyone involved in the enterprise was armed. However, it does not appear to us that he challenged this instruction below, and we decline to consider it at this time. We note in passing that while knowledge might be a factor for the jury to consider, it is not an essential element of the crime that must appear in the jury instructions. *Cf. Barnes*, 153 Wn.2d at 387. Furthermore, Harry's citation below to *State v. Cronin*, 142 Wn.2d 568, 572, 14 P.3d 752 (2000), is not well taken. *Cronin* supports the proposition that a defendant may not be convicted of "the" crime of an accomplice merely for involvement in "a" crime of an accomplice. But the jury instructions in this case instructed the jury they could find each defendant liable as an accomplice to "the" crime only if they found the defendant assisted in "the" crime.

for offensive or defensive purposes." *Id.* By contrast, the State has provided sufficient evidence here for a jury to reach that verdict.

## CONCLUSION

¶15 The record contains sufficient evidence for a jury to find, beyond a reasonable doubt, that deadly weapons were easily accessible and readily available to defendants, and that there was a connection between the weapons, the crimes, and the defendants. Accordingly, we affirm the courts below.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶16 SANDERS, J. (dissenting) — The majority concludes the State presented sufficient evidence of a nexus between the O'Neals, the firearms in their home, and the crimes they committed for a rational trier of fact to find they were armed. I disagree. The State presented no evidence whatsoever of any such nexus. Accordingly, the O'Neals's firearms enhancements are invalid.

*The State Failed To Present Evidence of a Nexus Between the Firearms and the Crimes*

¶17 The State obtained a warrant to search the home of Harry, Jesse, and Greg O'Neal, where it discovered evidence of drug manufacturing and a score of firearms stored in various locations. All three were charged and convicted of manufacturing methamphetamine with a firearms enhancement. Greg O'Neal was also charged and convicted, inter alia, of manufacturing marijuana with a firearms enhancement.

¶18 Under Washington law, defendants convicted of certain felonies while "armed with a firearm" receive a firearm enhancement to their standard range sentence. RCW 9.94A-.533(3). A defendant in "constructive possession" of a firearm

is "armed" for the purpose of a firearm enhancement only if there is "a nexus between the defendant, the crime, and the weapon." *State v. Gurske*, 155 Wn.2d 134, 138, 118 P.3d 333 (2005). A nexus between a defendant and a firearm exists only if the firearm is " 'easily accessible and readily available for use.' " *State v. Schelin*, 147 Wn.2d 562, 567, 55 P.3d 632 (2002) (quoting *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993)). And a nexus between a firearm and a crime exists only if the firearm is related to the crime. *See Gurske*, 155 Wn.2d at 142 ("The mere presence of a weapon at the crime scene may be insufficient."). Specifically, when a defendant is charged with manufacturing drugs while armed with a deadly weapon, a nexus between the weapon and the crime exists only if the defendant "used a deadly weapon to protect his drugs." *Schelin*, 147 Wn.2d at 569 (citing *State v. Mills*, 80 Wn. App. 231, 236, 907 P.2d 316 (1995)).

¶19 Here, the State presented evidence firearms were easily accessible and readily available to the O'Neals. But it presented no evidence the firearms were related to the underlying crime of drug manufacturing. " 'Simply constructively possessing a weapon on the premises sometime during the entire period of illegal activity is not enough to establish a nexus between the crime and the weapon.' " *Schelin*, 147 Wn.2d at 570 (quoting *State v. Johnson*, 94 Wn. App. 882, 895, 974 P.2d 855 (1999)). Otherwise, "courts run the risk of punishing a defendant under the deadly weapon enhancement for having a weapon unrelated to the crime." *State v. Willis*, 153 Wn.2d 366, 372, 103 P.3d 1213 (2005) (citing *Johnson*, 94 Wn. App. at 895). "If an assault with a beer bottle occurs in a kitchen, a defendant is not necessarily 'armed' with a deadly weapon because knives are kept in the kitchen." *Schelin*, 147 Wn.2d at 570. And a defendant who manufactures drugs in a building is not necessarily "armed" with a deadly weapon merely because there are firearms in the building. The State failed to present any evidence of a nexus between the O'Neals'

firearms and their predicate crimes. Accordingly, their firearms enhancements should be reversed.

¶20 Therefore I dissent.

J.M. JOHNSON, J., concurs with SANDERS, J.

Reconsideration denied March 30, 2007.