# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46216-8-II |
| Respondent, | |
| v. | |
| DONALD HOWARD McELFISH, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Donald McElfish appeals the trial court's imposition of discretionary legal

financial obligations (LFOs) without assessing his ability to pay as required under RCW

10.01.160(3). We hold that the trial court erred in imposing LFOs without considering

McElfish's ability to pay. In a statement of additional grounds (SAG), McElfish challenges his

convictions of attempted second degree rape, first degree kidnapping, and second degree assault

with sexual motivation on various grounds.[1] We hold that none of his SAG assertions has merit.

Accordingly, we affirm McElfish's convictions. But we reverse the trial court's

imposition of discretionary LFOs and remand for the trial court to conduct an assessment of

---

[1] His SAG challenges his convictions on six grounds: (1) insufficient evidence of kidnapping
and attempted rape, (2) a public trial right violation, (3) an improper accomplice liability
instruction, (4) failure to give a unanimity jury instruction, (5) prosecutorial misconduct, and (6)
ineffective assistance of counsel.

McElfish's present and future ability to pay discretionary LFOs and thereby determine whether the imposition of such LFOs is appropriate under RCW 10.01.160(3).

FACTS

Brandt Jensen accused CM of stealing a bag that belonged to him. With McElfish and another man present, Jensen displayed a gun and a knife and forced CM to take her clothes off. He told her that all three men were going to have sex with her. Jensen and the other man then left CM with McElfish. McElfish then grabbed CM's breast, tried to touch her vagina, and blocked her from leaving. She pleaded with him to leave her alone, but he persisted. CM finally was able to escape.

The State charged McElfish with attempted first degree rape, first degree kidnapping, second degree assault with sexual motivation, and indecent liberties. A jury found him guilty of attempted second degree rape, first degree kidnapping, and second degree assault with sexual motivation, but not guilty of indecent liberties. The trial court sentenced McElfish to 100 months to life in prison.

The trial court imposed LFOs of $4,935.69, including a discretionary LFO of $816.69 for court-appointed attorney fees. The judgment and sentence includes a boilerplate finding that the sentencing court considered McElfish's financial circumstances and present and future ability to pay before imposing any LFOs. However, the record shows that the trial court did not actually assess McElfish's ability to pay. In fact, the record shows that McElfish was 64 years old, was indigent, and suffered from serious health problems. Defense counsel did not object to the trial court imposing LFOs without making this assessment.

McElfish appeals his convictions and sentence.

ANALYSIS

A.     LEGAL FINANCIAL OBLIGATIONS

McElfish argues that the trial court erred in imposing discretionary LFOs without

assessing his present and future ability to pay as required under RCW 10.01.160(3).  We agree.

1.     No Objection in the Trial Court

McElfish failed to object when the trial court imposed discretionary LFOs without

assessing his ability to pay.  Under RAP 2.5(a), we ordinarily do not consider LFO challenges

raised for the first time on appeal.  *See State v. Lyle*, ___ Wn. App. ___, 355 P.3d 327, 329

(2015).  However, under special circumstances we will consider an LFO challenge on appeal

despite the defendant's failure to object at sentencing.  *See State v. Bertrand*, 165 Wn. App. 393,

398, 403-04, 267 P.3d 511 (2011) (considering an unpreserved LFO challenge when the record

showed that the defendant was disabled and unable to work and she was required to start paying

within 60 days).

Here, the record shows that McElfish was 64 years old, indigent, and suffered serious

health problems.  In addition, he faced a sentence of 100 months to life.  Given these facts, we

exercise our discretion to consider McElfish's challenge to his discretionary LFOs.

2.     Trial Court's Failure to Assess Ability to Pay

RCW 10.01.160(3) provides that the trial court (1) "shall not order a defendant to pay

costs unless the defendant is or will be able to pay them," and (2) shall take account of the

defendant's financial resources and the nature of the burden that payment of costs will impose in

determining the amount and method of payment of costs.  "The trial court must decide to impose

LFOs and must consider the defendant's current or future ability to pay those LFOs based on the

particular facts of the defendant's case." *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015).

The Supreme Court in *Blazina* made it clear that the trial court must expressly assess, on the record, a defendant's ability to pay LFOs.

> Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

*Blazina*, 182 Wn.2d at 838.

Here, the record shows that the trial court failed to assess McElfish's current or future ability to pay. Under *Blazina*, inclusion of boilerplate language in the judgment and sentence that the trial court made such an assessment is not sufficient. *Id.* Accordingly, we hold that the trial court erred in imposing discretionary LFOs in violation of RCW 10.01.160(3).

B.    SAG ISSUES

1.    Sufficiency of the Evidence

McElfish claims that the State failed to prove the requisite elements of kidnapping and attempted rape because once Jensen and the other man left his room, he let CM go free. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all

reasonable inferences drawn from that evidence. *Id.* Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

CM testified that after Jensen left, McElfish grabbed her breast, tried to touch her vagina, and blocked her from the door. She pleaded with him to leave her alone, but he persisted. Only after he opened the door to yell for Jensen to help him was she able to escape out a different door. This evidence supports the elements of first degree kidnapping in that McElfish intentionally held CM against her will in an attempt to rape her. The evidence also supports the elements of attempted second degree rape in that McElfish intentionally took a substantial step toward raping CM.

Taking this evidence in a light most favorable to the State, a rational trier of fact could have found McElfish guilty beyond a reasonable doubt. Therefore, we hold that sufficient evidence supported McElfish's convictions for kidnapping and attempted rape.

2.    Public Trial Right

McElfish claims that the trial court violated his public trial rights by not conducting a *Bone-Club*[2] analysis before allowing the prosecutor to show a PowerPoint presentation to the jury. But the record shows that the prosecutor used a PowerPoint presentation during closing argument, in open court, and there was no closure of his trial. A *Bone-Club* analysis is necessary only if there is a courtroom closure. *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012). We hold that the trial court did not violate McElfish's public trial right.

---

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

3.    Accomplice Liability Instruction

McElfish claims that the trial court gave a faulty accomplice liability instruction. We disagree.

The trial court gave an instruction based on WPIC 10.51. 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 10.51, at 217 (3d ed. 2008). We approved an identical instruction in *State v. O'Neal*, 126 Wn. App. 395, 418-19, 109 P.3d 429 (2005), *aff'd*, 159 Wn.2d 500, 150 P.3d 1121 (2007). Nevertheless, McElfish seems to argue that because his role as a principal to the kidnapping and rape was vigorously controverted, the trial court erred in instructing the jury that he could be found guilty as either a principal or an accomplice.

The evidence showed that Jensen instigated the assault, kidnapping, and attempted rape of CM. But the evidence also showed that when Jensen left the room, McElfish attempted to rape CM and prevented her from leaving. This evidence was sufficient to support an accomplice liability instruction stating that McElfish could be both an accomplice and a principal. Therefore, we hold that the trial court did not err in giving an accomplice liability instruction.

4.    Failure to Give Unanimity Instruction

McElfish claims that the trial court erred in not giving a unanimity instruction because the prosecution argued that he was either an accomplice or a principal with regard to the rape. We disagree.

A unanimity instruction is not required when the State argues that the defendant was either the principal or an accomplice. *State v. Walker*, 182 Wn.2d 463, 484, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015). The jury need not unanimously agree on the defendant's manner

6

of participation in the crime. *Id.* Accordingly, we hold that the trial court did not err when it did not give a unanimity instruction.

     5.    Prosecutorial Misconduct

        a.    Commenting on Failure to Testify

McElfish claims that the prosecutor committed misconduct by commenting on his right to not testify at trial. We disagree.

The Fifth Amendment bars the prosecution from commenting on a defendant's failure to testify to infer guilt. *State v. Barry*, 183 Wn.2d 297, 306, 352 P.3d 161 (2015). McElfish argues that the following was an improper argument: "Now, you cannot hold the defendant not testifying against him. Don't do that. It's the State's job to prove the case." Report of Proceedings (RP) (Mar. 14, 2012) at 57. But this was not a comment on the defendant's failure to testify to infer guilt. The prosecutor did not suggest that the jury should draw any inferences, and in fact told them that it could not draw such inferences. And the prosecutor's argument mirrored that in instruction 6, which stated, "The defendant is not required to testify. You may not use the fact that the defendant has not testified to infer guilt or to prejudice him in any way." Clerk's Papers at 22.

We hold that the prosecutor did not engage in misconduct by commenting on McElfish's failure to testify at trial.

        b.    Misstating the State's Burden of Proof

McElfish claims that the prosecuting attorney misstated the State's burden of proof by comparing that burden with baking a cake. We disagree.

Under certain circumstances, a prosecutor commits misconduct if he or she trivializes the State's burden of proof by comparing the burden to mundane tasks. *State v. Anderson*, 153 Wn. App. 417, 425, 431, 220 P.3d 1273 (2009) (elective surgery, babysitting, and changing lanes on the freeway); *see also State v. Johnson*, 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010) (fill in the blank and a partially completed puzzle). But here, the prosecutor did not make such a comparison. During opening statements, the prosecutor explained that a deoxyribonucleic acid (DNA) expert would tell the jury that her tests on the chair from McElfish's room were inconclusive because she was able to identify at least five contributors. The prosecutor explained,

> [I]f there's more than three [contributors], they can't pull them apart. There's at least five. Okay. It's like when you make a cake and all the ingredients go on the cake, you can't pull out those ingredients later because they're all jumbled up. That's what you're going to hear.

RP (Mar. 12, 2012 Opening Statements) at 14. This comment had nothing to do with the State's burden of proof.

We hold that the prosecutor did not misstate the State's burden of proof.

      c.    Cumulative Prosecutorial Misconduct

McElfish claims that the cumulative effect of repetitive prejudicial misconduct denied him a fair trial, citing *In re Personal Restraint of Glasmann*, 175 Wn.2d 696, 286 P.3d 673 (2012). He claims that the prosecutor acted unprofessionally and disrespectful toward him and the prosecutor's opening and closing statements denigrated defense counsel, misstated the burden of proof, and expressed the prosecutor's personal belief as to the defense witnesses' veracity. We disagree.

8

This case is not like *Glasmann* where the prosecutor made repeated assertions of the defendant's guilt, improperly modified exhibits, and made improper statements that the jury could only acquit if it believed the defendant. 175 Wn.2d at 710. McElfish cites no examples in the record where the prosecutor acted unprofessionally and showed disrespect to him as he is required to do under RAP 10.10(c). Similarly, he fails to cite any instances in the opening statement or closing argument where the prosecutor denigrated defense counsel. *Id.* And, as we held above, the prosecutor did not comment on McElfish's failure to testify or misstate the State's burden of proof.

We hold that McElfish's cumulative prosecutorial misconduct claim has no merit.

6. Ineffective Assistance of Counsel

McElfish claims that he was denied his right to effective assistance of counsel in multiple ways. We disagree that defense counsel was ineffective in any of the ways that McElfish claims.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). To demonstrate deficient performance the defendant must show that, based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). The law affords trial counsel wide latitude in the choice of tactics. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 736, 16 P.3d 1 (2001). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

a. Vouching For Witnesses

McElfish claims that his defense counsel should have objected when the prosecutor vouched for the credibility of the State's witnesses. We disagree.

It is misconduct for a prosecutor to personally vouch for the credibility of a witness. *State v. Thorgerson*, 172 Wn.2d 438, 462, 258 P.3d 43 (2011). Improper vouching generally occurs if the prosecutor expresses his or her personal belief about the veracity of a witness, or if the prosecutor indicates that evidence not presented at trial supports the witness's testimony. *Id.* However, prosecutors are afforded wide latitude during closing argument to argue from the evidence and reasonable inferences from the evidence. *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203 (2012).

Here, the prosecutor explained during closing argument why the jury should find the State's witnesses credible and the defense witnesses not credible. The prosecutor discussed the testimony presented and explained how that supported the State's position. At one point, the prosecutor argued that CM was not out to get anyone in trouble and there was "[n]o evidence or motive for her to lie." RP (Mar. 14, 2012) at 47. The prosecutor later argued that "[t]he defense witnesses are not reliable." RP (Mar. 14, 2012) at 58. She then explained why the jury should find them unreliable.

There was nothing objectionable about the prosecutor's arguments. The prosecutor did not express her personal beliefs about the veracity of any witnesses. Therefore, as a legitimate tactical decision, defense counsel could have decided to not object to avoid being overruled by the trial court in front of the jury. And had defense counsel objected, the trial court would have overruled the objection. McElfish's claim has no merit.

10

    b.    Admission of Prior Bad Acts

McElfish claims that defense counsel should have objected or proposed a limiting instruction before the trial court admitted evidence that he had a prior sodomy conviction. However, the record shows that the sodomy conviction was introduced at sentencing well after the jury had rendered its verdicts.  Further, defense counsel objected to the State introducing it at all.  McElfish's claim has no merit.

    c.    "Cloak of Righteousness"

McElfish claims that his attorney should have objected when the prosecutor stopped acting impartially and drew a "'cloak of righteousness'" around herself in closing.  SAG at 3. But McElfish does not explain this claim with any reference to the record or provide any basis for his assertion.  Without any such explanation informing us of the nature and occurrence of the alleged error, we do not consider it.  RAP 10.10(c).

    d.    Comment on Defendant's Silence

McElfish claims that defense counsel should have objected when the prosecutor improperly commented on his decision not to testify.  As we discussed above, the prosecutor did not improperly comment on McElfish's decision not to testify.  Therefore, defense counsel's failure to object was not unreasonable or prejudicial.  McElfish's claim has no merit.

    e.    Failure to Present Defense Witnesses

McElfish claims that defense counsel failed to interview or call witnesses on his behalf. But he does not support his claim by explaining who these witnesses are or what testimony they would have given.  Therefore, we do not consider this claim.  RAP 10.10(c).

f. Failure to Argue for Exceptional Sentence Downward

McElfish claims that defense counsel failed to argue for an exceptional sentence below the standard sentencing range. Former RCW 9.94A.535 (2011) provides that the trial court may impose a sentence outside the standard range if there are substantial and compelling factors justifying an exceptional sentence. But McElfish does not articulate what substantial and compelling factors would support an exceptional sentence downward under the facts of this case. Therefore, we do not consider this claim. RAP 10.10(c).

We affirm McElfish's convictions. However, we reverse the trial court's imposition of discretionary LFOs and remand for the trial court to conduct an assessment of McElfish's present and future ability to pay discretionary LFOs and thereby determine whether the imposition of such LFOs is appropriate under RCW 10.01.160(3).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
LEE, J.