# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51402-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SERGEY VLADIMIR KOTLYAROV, | |
| Appellant. | |

MAXA, C.J. – Sergey Kotlyarov appeals his convictions and sentence for four counts of second degree unlawful possession of a firearm and the jury's finding that he was armed with a firearm when he committed the crime of unlawful possession of a controlled substance. Officers discovered two of the four firearms when they searched a large cabinet in a room Kotlyarov occupied while in the process of arresting him, and they later obtained a search warrant for the room.

We hold that (1) the trial court did not err in denying Kotlyarov's motion to suppress the firearms because Kotlyarov did not challenge the search warrant, and the firearms would have been discovered when that valid warrant was executed even if the initial search of the cabinet was unlawful; (2) the State presented sufficient evidence for the jury to find that Kotlyarov was armed with a firearm when he possessed the methamphetamine; and (3) the criminal filing fee, DNA collection fee, and interest accrual provision imposed as a part of Kotlyarov's sentence must be stricken. Therefore, we affirm Kotlyarov's conviction, but we remand for the trial court

to strike the criminal filing fee, DNA collection fee, and interest accrual provision from the judgment and sentence.

FACTS

On March 11, 2016, City of Lakewood police officers Darrell Moore and Jacob Veenker responded to a report of a burglary in progress at a local business. The reporting party, Andre Kramareuskiy, stated that two men had broken into the building and were going in and out. He also said that the business was closed. The officers arrived to see a man later identified as Kotlyarov in front of the business. After struggling to get Kotlyarov to follow their orders, the officers handcuffed and detained Kotlyarov. The officers talked with Kramareuskiy, who stated that he owned the business and had fired Kotlyarov a week earlier.

The officers attempted to clear the building, but there was a locked room to which they had no access. Kotlyarov admitted that he had been living in that room. Kotlyarov agreed to open the locked door but could not find his key.

Moore told Kramareuskiy and Kotlyarov that the situation appeared to be a civil matter and prepared to leave. But Kramareuskiy claimed that Kotlyarov would shoot him if the officers left. Kramareuskiy then rushed back to the locked door and kicked it open. Kotlyarov pushed Kramareuskiy out of the way and ran into the room. Moore followed them, fearing that Kotlyarov might shoot Kramareuskiy as Kramareuskiy had claimed or that the two might end up in a fight.

Upon entering the room, Moore saw a semi-automatic handgun near Kotlyarov. The officers drew their weapons and ordered Kotlyarov to the ground. When Kotlyarov refused, Moore kicked him in the abdomen and Kotlyarov dropped to the ground. Veenker then took control of Kotlyarov and handcuffed him. Moore directed Veenker to open a large cabinet so

they could make sure no one was hiding in it who potentially could ambush the officers. When Veenker did so, Moore could see that it contained two long guns that appeared to be rifles. Moore also saw a large amount of rifle and handgun ammunition within reach of Kotlyarov as well as glass pipes, aluminum foil, and prescription bottles.

Moore applied for and received a search warrant for the room. Officers searched the room and found Kotlyarov's multiple firearms, boxes of ammunition, scales, baggies, and 7.9 grams of methamphetamine.

The State charged Kotlyarov with four counts of second degree unlawful possession of a firearm and one count of unlawful possession of a controlled substance (methamphetamine) with intent to deliver while armed with a firearm.

Before trial, Kotlyarov moved to suppress the evidence collected during the search of the room. He argued in part that the officers' search of the cabinet was unlawful. However, Kotlyarov did not challenge the warrant that the officers obtained to search the room.

The trial court conducted a CrR 3.6 hearing and heard testimony from Moore and Veenker. The court denied the suppression motion. The court entered extensive written findings of fact consistent with the facts stated above. The court concluded that Veenker lawfully opened the large cabinet as part of a protective sweep of the immediate area. In addition, the court concluded that searching the cabinet was lawful because Moore had a reasonable belief that the dresser harbored a person who could have posed a danger to the officers.

At trial, Moore and Veenker testified regarding the facts of the incident consistent with the trial court's suppression hearing findings. The evidence showed that during the search of the room, officers seized a loaded bolt action rifle, two loaded shotguns, and a loaded semi-

automatic pistol. They also seized a large amount of ammunition that was strewn around the room.

In addition, officers seized a 7.9 gram bag of methamphetamine, two digital scales, and 103 plastic bags. One of these scales tested positive as containing methamphetamine residue. Moore testified that the quantity of drugs, the scales, and the baggies made Kotlyarov a suspect in an on-going drug operation.

A jury found Kotlyarov guilty of four counts of second degree unlawful possession of a firearm. The jury found Kotlyarov not guilty of unlawful possession of methamphetamine with intent to deliver, but guilty of the lesser included offense of unlawful possession of methamphetamine. By special verdict, the jury found that Kotlyarov was armed with a firearm when he committed the crime of unlawful possession of methamphetamine.

At sentencing, the trial court found Kotlyarov indigent but imposed mandatory legal financial obligations (LFOs), including a $200 criminal filing fee and a $100 DNA database fee. The court ordered that interest would begin accruing immediately on all LFOs.

ANALYSIS

A. RULING ON SUPPRESSION MOTION

Kotlyarov argues that the trial court erred in denying his CrR 3.6 motion to suppress the evidence discovered in the room he was occupying because Veenker's search of the cabinet was unlawful. He claims that the protective sweep exception to the warrant requirement was inapplicable because the search of the cabinet occurred before the officers arrested him. However, we need not address this issue because as the State emphasizes, Kotlyarov did not challenge in the trial court and does not challenge on appeal the validity of the search warrant the officers subsequently obtained. Therefore, even if the search of the cabinet was unlawful, the

two firearms the officers discovered in that search would have been admissible under the independent source doctrine.[1]

The Fourth Amendment to the Unites States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches unless an exception to the warrant requirement applies. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). Under the exclusionary rule, evidence obtained as a result of an illegal search generally must be suppressed. *State v. Betancourth*, 190 Wn.2d 357, 364, 413 P.3d 566 (2018).

However, the independent source doctrine provides that "evidence tainted by unlawful police action is not subject to exclusion 'provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action.' " *Id.* at 364-65 (quoting *State v. Gaines*, 154 Wn.2d 711, 718, 116 P.3d 993 (2005)). And a search warrant based in part on unlawfully obtained information remains valid if probable cause exists based on independent facts even if that information is excluded. *Gaines*, 154 Wn.2d at 718.

Here, the officers obtained a search warrant for Kotlyarov's room after observing the two firearms in the cabinet as well as a handgun, ammunition, and drug paraphernalia. Kotlyarov does not argue that the warrant was invalid. And in any event, the items the officers observed in addition to the two firearms in the cabinet were more than sufficient standing alone to provide probable cause for a warrant. Execution of the valid warrant would have revealed the two firearms in the cabinet. Therefore, under the independent source doctrine the firearms are not required to be suppressed.

We hold that the trial court did not err in denying Kotlyarov's suppression motion.

---

[1] Although the trial court here applied the protective sweep exception to the warrant requirement, we can affirm a trial court's ruling on any basis supported by the record. *State v. Streepy*, 199 Wn. App. 487, 500, 400 P.3d 339, *review denied*, 189 Wn.2d 1025 (2017).

B.      SUFFICIENCY OF EVIDENCE – ARMED WITH A FIREARM

Kotlyarov argues that the evidence was insufficient for the jury to find that he was armed with a firearm when he committed the crime of possession of methamphetamine. We disagree.

1.      Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence, and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id.* at 265-66. These standards apply to firearm sentencing enhancements. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018).

2.      Legal Principles

The jury found by special verdict that Kotlyarov was armed with a weapon at the time he possessed the methamphetamine. This finding invoked a firearm enhancement to his sentence under RCW 9.94A.530 and RCW 9.94A.533(3).

"To establish that a defendant was armed for the purpose of a firearm enhancement, the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *Sassen Van Elsloo*, 191 Wn.2d at 826.

Regarding the first requirement, the presence or even constructive possession of a weapon found at a crime scene alone is not enough to establish that the defendant was armed in this context. *Id.* On the other hand, "[t]he defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." *State v. O'Neal*, 159 Wn.2d 500,

6

504, 150 P.3d 1121 (2007). "[T]he State need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible so long as it was at the time of the crime." *Id.* at 504-05. And a drug distribution operation is a continuing crime that is ongoing even when the defendant is elsewhere. *See State v. Neff*, 163 Wn.2d 453, 464-65, 181 P.3d 819 (2008) (stating this principle in the context of a drug manufacturing operation).

Regarding the second requirement, we look to the nature of the crime, the type of firearm, and the context in which it was found to determine if there was a nexus between the defendant, the firearm, and the crime. *Sassen Van Elsloo*, 191 Wn.2d at 827. "[W]hen the crime is of a continuing nature, such as a drug operation, a nexus exists if the firearm is 'there to be used' in the commission of the crime." *Id.* at 828 (quoting *State v. Gurske*, 155 Wn.2d 134, 138, 118 P.3d 333 (2005)). As a result, a sufficient nexus exists if there is evidence that the firearm was present to protect an ongoing drug operation. *O'Neal*, 159 Wn.2d at 506; *State v. Eckenrode*, 159 Wn.2d 488, 494-95, 150 P.3d 1116 (2007).

### 3. Analysis

Here, officers discovered multiple firearms and ammunition and a large amount of methamphetamine in the room in which Kotlyarov was living. He had at least constructive possession of the firearms, they were close to him, and they certainly were "easily accessible and readily available for offensive or defensive purposes." *Sassen Van Elsloo*, 191 Wn.2d at 826. Further, a reasonable inference is that the firearms were in the room to protect Kotlyarov's methamphetamine, which he was convicted of possessing. The firearms were there to be used, and we can infer that Kotlyarov intended to use them to protect his possession of drugs when he

pushed Kramareuskiy aside and ran into the room. Therefore, there was a nexus between the firearms and Kotlyarov's conviction.

Kotlyarov argues that even though the firearms and methamphetamine were in the same room in which he was living, that was the only room he occupied and it was natural that all his possessions would be in that room. He also emphasizes that only the handgun was in the open and there was no evidence of proximity to the drugs. However, these arguments essentially ask us to draw inferences in Kotlyarov's favor. In a sufficiency of evidence claim, we draw all reasonable inferences in the State's favor. *Sassen Van Elsloo*, 191 Wn.2d at 826.

We hold that the evidence was sufficient to prove beyond a reasonable doubt that Kotlyarov was armed with the firearms during the commission of his possession of methamphetamine offense.

C. MANDATORY LFOS

Kotlyarov argues, and the State concedes, that the criminal filing fee, DNA collection fee, and interest accrual provision must be stricken from the judgment and sentence. We agree.

In 2018, the legislature amended (1) RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing fee on an indigent defendant; (2) RCW 43.43.7541, which established that the DNA collection fee no longer is mandatory if the offender's DNA previously had been collected because of a prior conviction; and (3) RCW 10.82.090, which now states that no interest will accrue on nonrestitution interest after June 7, 2018, and that the trial court shall waive nonrestitution interest that had accrued before June 7, 2018. RCW 10.82.090(1), (2)(a). The Supreme Court in *State v. Ramirez* held that the 2018 amendments to the LFO statutes apply prospectively to cases pending on direct appeal. 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

The trial court found Kotlyarov indigent at sentencing. Therefore, under RCW 36.18.020(2)(h), the criminal filing fee must be stricken. The State confirmed that Kotlyarov's DNA previously has been collected because of a prior conviction. Therefore, under RCW 43.43.7541, the DNA collection fee must be stricken. And under RCW 10.82.090, the interest accrual provision must be stricken.

### CONCLUSION

We affirm Kotlyarov's convictions, but we remand for the trial court to strike the criminal filing fee, the DNA collection fee, and the interest accrual provision from his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
LEE, J.

_____
CRUSER, J.