**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82531-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| THOMAS PHILLIP LEAE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Thomas Leae appeals his convictions for murder in the first degree and rendering criminal assistance in the third degree. He argues that insufficient evidence supports his murder conviction, the prosecutor committed misconduct, a detective's testimony was improper opinion and expert testimony, his counsel was ineffective, and that the discretionary Legal Financial Obligations (LFOs) imposed on him should be stricken.[1] We remand to strike the discretionary LFOs. We otherwise affirm.

---

[1] Leae also filed a statement of additional grounds that raises no issues of merit.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

The State charged Leae with murder in the first degree and robbery in the first degree based on the November 25, 2015, murder of Bentley Brookes. The State later amended the information, adding a charge of rendering criminal assistance in the first degree. At trial, the State presented testimony from witnesses to establish the following timeline of events.

Pacific Bullion Precious Metals (Pacific Bullion) is a coin, metal, and jewelry store in Vancouver, Washington that Brookes owned with his brother. The store had a camera surveillance system that recorded video, but not audio. The surveillance video showed Leae entering Pacific Bullion on November 12, 2015, and engaging in a brief purchase transaction with Brookes. Brookes is seen taking an item from Leae, getting out his wallet, and then going to the cash drawer.

On November 18, 2015, surveillance video depicts Leae and Ailiana Siufanua at Pacific Bullion. Brookes spoke with Leae and Siufanua, and purchased something from them after weighing it.

On the morning of November 25, 2015, Keith West, a silver coins dealer, made an agreement with Brookes over the phone to sell Brookes some silver coins. West arrived at Pacific Bullion within an hour of the call, where he discovered Brookes' body lying on the floor with a large pool of blood around his head.

When police arrived, they reviewed the Pacific Bullion surveillance footage. The footage depicts a woman, later identified as Siufanua, enter the store with a backpack. Siufanua approached the counter, put down the backpack, and pulled out a gun. Brookes stepped around the counter, trying to reach for the gun, and Siufanua shot him

in the face. Brookes dropped immediately. Siufanua filled the backpack with items from the store, stepped over Brookes's body, and left from the same door from which she entered.

On November 25, 2015, video footage from a Vancouver C Tran bus showed a silver Honda Accord with a driver and passenger. Police obtained the partial license plate "AND84" from the footage. The footage was taken about a minute prior to Brookes's murder a block away from Pacific Bullion. The passenger matched Siufanua's description from the Pacific Bullion footage. The driver had a "round hair style, maybe an afro."

A witness, Chaz Davis, identified Siufanua as a woman he saw near Pacific Bullion on the day of the murder. He saw an old "blue-ish" or "gray-ish" car pull near the transit station close to Pacific Bullion, and a woman got out of the car and entered Pacific Bullion. He described the driver of the car as a male with facial hair and an afro hair style. After learning of the murder, Davis contacted police.

Police canvassed the local motels, businesses, and pawn shops, and released an image of Siufanua from the Pacific Bullion footage to the public to help identify the suspect. During the course of the investigation, police discovered additional sightings of Leae and Siufanua in the days leading up to the murder. On November 12, 2015, surveillance footage captured Leae and Siufanua at the Vancouver WinCo. On November 14, 2015, Leae and a woman checked in a Motel 6 in Kalama, Washington. The desk clerk, Michelle Shertzer, later identified Leae in a photo montage. On November 18, 2015, Leae pawned four guitars at Lucky Loan, a pawn shop located diagonally across the intersection from Pacific Bullion.

On November 26, 2015, Leae checked into the Motel 6 in Kalama and checked out the following day.[2]  The desk clerk, Courtney Brumitt, who later identified Leae in a photo montage, said that Leae checked in the motel in the middle of the night, and he had blood on his hands.  The clerk saw him reaching down at his sock, and observed Leae's girlfriend waiting out in the parking lot.

On November 30, 2015, Siufanua's family contacted the police and identified the suspect in the surveillance video as Siufanua.  Siufanua's father told police that he spoke with his daughter and Leae that morning and he encouraged her to turn herself in.

On the evening of November 30, 2015, California highway patrol officers attempted to stop a speeding silver Honda Accord traveling southbound of Interstate 5.  Police ran the license plate, AND8486, and discovered the car was a stolen vehicle from Washington.  After a high speed chase, the car crashed into a tree between the northbound lane and an exit ramp at a rest area.  Siufanua, the identified passenger, died at the scene.  Leae, the identified driver, suffered a broken leg.  Officer John Rosendale searched Leae at the scene where he discovered Leae's Washington driver's license and about $1,600 in cash on his person.

Leae was transported to the hospital, where Officer Rosendale spoke with him in the trauma unit.  Officer Rosendale advised Leae of his Miranda rights, and Leae agreed to speak with him.  He identified Siufanua as the passenger.  He claimed he was borrowing the Honda Accord, then he said he was in the process of buying the car from an unidentified friend.

---

[2] Leae's name was on the motel receipt.

-4-

Washington detectives searched the Honda Accord, discovering coins, jewelry, various silver items, and a backpack filled with DVD movies, a laptop computer, and a paystub belonging to Siufanua. Police also recovered a Vancouver WinCo receipt from November 12, 2015, and Leae's pay stubs. Brookes's brother identified a tungsten ring, a pair of grape shears, a Tiffany pot, a goblet, and a hand mirror as items from Pacific Bullion from the recovered items. Two precious metal dealers, who frequently sold precious metals to Brookes, identified plastic bags containing metals, a turquoise ring, a mirror, scissors, a water pitcher, a chocolate pot, and a tea caddy as items they had sold to Brookes.

During Leae's trial, Vancouver Police Detective Lawrence Zapata testified about how Leae became a suspect. Detective Zapata also testified about the blood splatter seen on the surveillance video.

The jury found Leae guilty of murder in the first degree (count 1), robbery in the first degree (count 2), and rendering criminal assistance in the first degree (count 3). The jury found by special verdict that Leae or an accomplice was armed with a firearm in the commission of counts 1 and 2. The court found that counts 1 and 2 merged for sentencing purposes, as robbery was the triggering crime for the felony murder charge. See RCW 9A.32.030(1)(c).

The court sentenced Leae to 540 months, followed by community custody. The court determined that Leae would serve this sentence consecutively to his sentence in

California, where Leae is currently serving 25 years and 8 months to life.[3]  Leae appeals.

ANALYSIS

A.  Sufficiency of the Evidence

Leae contends that insufficient evidence supports his conviction for an accomplice to first degree felony murder.  We disagree.

We review if evidence is sufficient in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).  "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it."  State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007).  Circumstantial and direct evidence carry equal weight on appeal.  State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

The State charged Leae as an accomplice to felony murder with robbery in the first degree as the predicate offense.  A person is guilty of felony murder in the first degree if they attempt to commit the crime of robbery in the first degree, and in the furtherance of the crime, they or another participant causes the death of an uninvolved person.  RCW 9A.32.030(1)(c).  RCW 9A.08.020(3) states:

> (a) A person is an accomplice of another person in the commission of a
>     crime if:
> (1) With knowledge that it will promote or facilitate the commission of
>     the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to
>     commit it; or

---

[3] Leae was convicted of murder in the second degree, theft of a vehicle, and evading a peace officer for the November 30, 2015, car chase and Siufanua's death in the crash.

(ii) Aids or agrees to aid such other person in planning or committing it.

Despite Leae's argument that he was simply pawning items in the Vancouver area, the State presented overwhelming evidence that Leae was an accomplice to the robbery where Siufanua murdered Brookes. The surveillance tape establishes that Siufanua killed Brookes in the furtherance of the robbery. Leae was in Pacific Bullion twice in the weeks leading up to the murder, once with Siufanua. On the day of the murder, the surveillance footage depicted the Honda Accord with a male driver and passenger matching Siufanua's description a block away from Pacific Bullion. The day after the murder, Leae checked into a motel with blood on his hands accompanied by a woman. Leae's photo in the photo montage that the hotel clerks used to identify Leae matches the description of the driver of the Honda Accord from the surveillance tape, and Davis's testimony. When police apprehended Leae in California, he had crashed the Honda Accord seen on the surveillance video, with Siufanua as the passenger, and the car contained items from Pacific Bullion.

While a large portion of the evidence is circumstantial, it carries the same weight as direct evidence. When viewing the evidence in the light most favorable to the State, it is clear that Leae aided Siufanua in robbing Pacific Bullion. Sufficient evidence supports the jury's finding that Leae acted as an accomplice.

B. Prosecutorial Misconduct

Leae next argues that the prosecutor committed misconduct during closing arguments. We disagree.

To demonstrate prosecutorial misconduct, the defendant must prove that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d

741, 756, 278 P.3d 653 (2012). If the defendant did not object at trial, the error is waived unless the prosecutor's conduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760. On appeal, the defendant must demonstrate that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affected the jury's verdict. Emery, 174 Wn.2d at 760-61. "The prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury." In re Pers. Restraint of Davis, 152 Wn.2d 647, 716, 101 P.3d 1 (2004).

1.

Leae contends first that the prosecutor misstated that law of accomplice liability. The court instructed the jury that in the context of accomplice liability, aid means "all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime." During closing argument, the prosecutor said

> The word aid means all assistance whether given by words, acts, encouragement, support, or presence. It goes on that a person who is present and is willing to assist essentially lending moral support to the principal, the actor, is aiding in the commission of that crime. So you have to—you don't have to actually do a whole lot. As long as you're willing, and you're there to lend moral support, you are aiding in the commission of that crime.[4]

The defense did not object.

Leae contends that this statement by the prosecutor was a misstatement of accomplice liability. Despite Leae's contention that the jury could find that Leae aided

_____

[4] (Emphasis added.)

by merely lending moral support, he ignores the fact that the jury was also instructed that Leae had to "solicit, command, encourage, or request," or "aid or agree to aid another person" with the "<u>knowledge that it will promote or facilitate the commission of the crime.</u>"[5]  (Emphasis added).  Because moral support with knowledge would be sufficient to establish Leae was an accomplice to the robbery, the prosecutor did not misstate the law.

2.

Leae contends next that the prosecutor committed misconduct by arguing facts not in evidence.  During closing, the prosecutor argued

> Ailiana Siufanua, like I said, was 18 years old living at home with her parents and her sisters.  Never got into trouble.  Never had any experience with firearms.  They don't have any guns in their house.  Her father Aitu said that he never even fired a gun.
> So where would she have access to a firearm?  Who was she with that would get her access to a firearm?  What is—everything points to the defendant.  He brought her down here.  He was the one that had the car.  He has family down here.  Okay.  And he was the only one who had the opportunity to convince his girlfriend, his 18-year-old gullible girlfriend to commit this horrible crime.

The defense did not object.

Leae cannot demonstrate that this statement was so flagrant and ill intentioned that a curative instruction could not cure it, and that this statement affected the jury's verdict.  While the State agrees that this statement was improper, the jury was instructed that the attorneys' arguments were not evidence, and to disregard any argument unsupported by the evidence.  The jury was not required to find that Leae provided Siufanua with the gun to convict him as an accomplice.  Ultimately, Leae

---

[5] The jury is presumed to follow the court's instructions.  <u>State v. Stein</u>, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

cannot demonstrate that any error was incurable by instruction, or that this single point affected the verdict when there is overwhelming evidence of his involvement in the crime.

3.

Leae also argues that his counsel was ineffective for failing to object to these statements made during closing argument. We disagree. Washington follows the Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) test to determine if defense's counsel's performance was deficient. To demonstrate ineffective assistance of counsel, a defendant is required to show that: (1) defense counsel's representation was deficient, falling below an objective standard of reasonableness based on consideration of all the circumstances and (2) defense counsel's deficient representation prejudiced the defendant. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

We have a strong presumption that counsel's performance was reasonable. State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). The defendant must show the absence of a legitimate strategic or tactical reason supporting the challenged conduct by counsel. State v. Mannering, 150 Wn.2d 277, 286, 75 P.3d 961 (2003).

Leae cannot demonstrate his counsel was ineffective. Although defense counsel did not object, this statement was during the State's closing argument. It is rare for counsel to object during closing argument, therefore choosing not to object is a legitimate strategy. Further, counsel's objection could have brought more attention to how Siufanua obtained the gun, which was unnecessary for the jury's determination.

-10-

Because defense counsel had a legitimate strategy by not objecting during closing, Leae cannot demonstrate his counsel was ineffective.

    C.  <u>Opinion Testimony</u>

    Leae contends that Detective Zapata improperly gave his opinion about Leae's guilt. We disagree.

    We review a trial court's evidentiary rulings for an abuse of discretion. <u>Gilmore v. Jefferson County Pub. Transp. Benefit Area</u>, 190 Wn.2d 483, 494, 415 P.3d 212 (2018). The trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds. <u>Gilmore</u>, 190 Wn.2d at 494.

    In general, no witness, lay or expert, may offer an opinion about the defendant's guilt, whether by direct statement or inference. <u>City of Seattle v. Heatley</u>, 70 Wn. App. 573, 577, 854 P.2d 658 (1993). "However, testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." <u>Heatley</u>, 70 Wn. App. at 578.

    Detective Zapata testified that Leae became a suspect in mid-December. The State then asked "what do you base your progression of the case on when you determine that he was now a suspect in this case? . . . What evidence did you have?" Defense counsel objected. The court sustained the objection, allowing the State to "rephrase your question as to what prompted him to make a decision and become a suspect." Over objections by defense, Detective Zapata discussed the factors that led police to discovering Leae's involvement: the video footage, the car, and the items discovered in the car. The court addressed defense's concern, stating Detective Zapata

is "not going to state on the record that he believe[s] Mr. Leae is guilty. He merely is commenting on the videos and factors that led him to become a suspect. That's it. We're not going any farther than that."

Later, the prosecutor asked if Detective Zapata was able to determine whether Siufanua was acting alone, and Detective Zapata said "we were able to determine she was not acting alone." Defense objected and moved to strike. The court ultimately rejected defense's contention that this was opinion testimony, reasoning that "[t]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness is otherwise helpful to the jury. And it's based upon inferences from the evidence. It is not improper opinion testimony." The court sustained the objection after asking the State to rephrase the question: "But as you asked it, during the course of the investigation, did you determine, somewhat of [an] opinion conclusion. Rephrase it to include the facts. Sustained on that basis alone."

Leae cannot demonstrate that the court abused its discretion in allowing the State to elicit this testimony from Detective Zapata. Despite Leae's claim that Detective Zapata testified that Leae was the guilty accomplice, Detective Zapata's testimony was merely connecting the facts of the investigation for the jury. Explaining why someone became a person of interest, and how the police came to realize that Siufanua had an accomplice is not improper opinion testimony. The trial court carefully directed the State to ask questions in a way that would not elicit opinion testimony, and cured any potential error through the rephrased questions. Leae cannot demonstrate the court erred.

D. Blood Splatter Testimony

Leae next argues that Detective Zapata's testimony about blood splatter should have been excluded because he was not qualified as an expert witness. We disagree.

The trial court has wide discretion to determine the admissibility of evidence and we will not disturb the trial court's evidentiary decision absent an abuse of discretion. State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). Under ER 701, a lay witness may testify to "inferences which are (a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

At trial, Detective Zapata testified about the blood seen on the Pacific Bullion surveillance footage, and if it was likely that Siufanua would have gotten any blood on her shoes or clothing. The defense did not object to this line of questioning until Detective Zapata was asked if he was surprised that police were never able to locate the clothing Siufanua wore at the time of the murder. Because Leae raises this issue for the first time on appeal, and does not contend it is manifest error affecting a constitutional right, we need not consider this argument. RAP 2.5; McFarland, 127 Wn.2d at 332-33 (we do not consider issues raised for the first time on appeal).

Leae also argues that his counsel was deficient for failing to object to Detective Zapata's testimony about blood splatter. Despite Leae's contention that Detective Zapata improperly testified as an expert lacking foundation, this testimony was permissible under ER 701. Detective Zapata had been a detective for 19 years at the time of trial, 10 of those years as a major crimes detective mainly working homicides. His testimony regarding blood splatter was inferred from his perspective as a detective

as to why Siufanua may or may not have gotten the victim's blood on her shoes or clothing. The comments he made regarding blood patterns were to illustrate to the jury what they were seeing on the video, and how Detective Zapata formulated his opinion. Because Detective Zapata's testimony was permissible under ER 701, Leae cannot demonstrate that his counsel acted below an objective standard of reasonableness by not objecting. See McFarland, 127 Wn.2d at 334-35.

### E. Discretionary LFOs

Leae argues that the court erred by imposing discretionary LFOs. The State concedes. We accept the State's concession.

The trial court found Leae indigent and waived all waivable fees, fines, and interest. The court imposed community custody supervision fees and stated that the LFOs would bear interest from the date of judgment to the date of payment in full.[6]

Courts shall not impose discretionary costs on defendants who have been found indigent. RCW 10.01.160(3); State v. Ramirez, 191 Wn.2d 732, 748, 426 P.3d 714 (2018). Supervision fees are discretionary LFOs. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). "As of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations." RCW 10.82.090(1). We remand to the trial court to strike the community custody supervision fees and interest accrual provision.[7]

---

[6] While Leae notes that the court imposed a $500 victim assessment fee, that fee is a mandatory LFO.

[7] We also remand for the trial court to strike the references from the judgment and sentence about the robbery as the robbery conviction was properly merged with the murder conviction for sentencing purposes.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Dwyer, J._            _Appelwick, J._