FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 29, 2024

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 29, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 101635-2 |
| RICKY MARVIN ARNTSEN, | ) ) | EN BANC |
| Petitioner. | ) ) ) | Filed: February 29, 2024 |

MONTOYA-LEWIS, J.—This personal restraint petition (PRP) challenges the sufficiency of the evidence for second degree assault with a deadly weapon. In an apparent road rage incident, Ricky Arntsen forced another driver to stop her car, exited his own vehicle, and circled the other car while carrying an AK-47 assault rifle. After viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found Arntsen guilty of second degree assault beyond a reasonable doubt. We reverse.

## FACTS AND PROCEDURAL HISTORY

### A. Factual Background

Ricky Arntsen was tried and convicted of several crimes for three incidents spanning two days. At approximately 7:00 a.m. on December 1, 2014, Arntsen

entered a woman's apartment and forced her into the parking lot at gunpoint.[1]  He

was charged with first degree burglary for that incident.  The next day, on December

2, 2014, Arntsen drove a vehicle through the front window of a Big 5 Sporting Goods

store and took over a dozen guns from the store display.  He was charged with second

degree burglary, malicious mischief, and several counts of theft of a firearm and

unlawful possession of a firearm for the Big 5 incident.

The incident that took place between these two events is the subject of this

petition.  Around 8:00 a.m. on December 1, 2014, Arntsen was involved in a road

rage incident with Kim Koenig in Auburn.  For this incident, he was charged with

second degree assault with a deadly weapon and felony harassment.  Koenig and

another witness, Robert Morrill, testified about the Koenig assault incident at trial.

1.  *Koenig Testimony*

Koenig testified that around 8:00 a.m. that morning, she was driving north on

Auburn Way when she noticed an "older-model Jaguar" car driving in the same

direction behind her with a blinker on, signaling intent to change lanes. 26 Verbatim

Rep. of Proc. (VRP) (Oct. 27, 2016) at 1875.  The road had two lanes of traffic in

each direction with a central turn lane; Koenig was in the right lane and the Jaguar

---

[1] The facts relating to the crimes other than the assault are undisputed and are drawn from the decision in Arntsen's direct appeal. *State v. Arntsen*, No. 76912-0-I, slip op. at 2-4 (Wash. Ct. App. Jan. 6, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/769120.pdf.

was in the left, signaling to move into the right lane. Koenig moved into a spot in the left lane in front of the Jaguar in order to create space for it to merge.

The Jaguar, driven by Arntsen, whom Koenig did not know, did not change lanes; instead, Arntsen started "getting really aggressive with [Koenig,] like [she] had made him very mad." *Id.* at 1876. Koenig said it was like he was "trying to attack" her car: "Driving up on me and stopping short of hitting me, swerving over into the other lane and acting like he wanted to hit me from the other side." *Id.* at 1876-77. He had his window rolled down and he was yelling at her, though she could not make out his words. Koenig testified that this behavior went on for perhaps a minute or two before he sped around her car, turned, and "slammed on his brakes" so that the car stopped diagonally across the lane in front of her and forced her to a stop. *Id.* at 1878.

Arntsen exited his car, carrying a rifle and with his face partially covered with a kerchief. He approached Koenig's car, holding the rifle, but not pointing it at her. Koenig testified that at this point, she believed that

> he meant to do me harm. What kind of harm he meant to do, I don't know. Whether or not I was going to be shot, whether or not he was going to assault me, steal my vehicle, I had no idea.
> But anybody that does something like that after being so angry is clearly not, you know, pulling a prank or doing anything fun. This was a lethal weapon that he was holding and he was coming at me. . . . I had no idea what was going to happen, but I was sure that it was not going to be good for me.

3

*Id.* at 1880-81. Arntsen circled Koenig's vehicle before returning to the Jaguar and driving away. At trial, when asked whether she thought Arntsen might shoot her, Koenig responded, "Oh, yeah, yeah." *Id.* at 1881. She explained, "I've been around guns my whole life. Why in the world would you have a gun unless you were going to use it? There are a number of things that you could do, I guess, with a gun, but my first thought is, yeah, I'm going to get shot." *Id.*; *see also id.* at 1900 ("He clearly meant me harm."). On cross-examination, when asked about a statement she made to the police that, at some point, she did *not* believe the other driver was going to shoot her, Koenig acknowledged that "it's possible that I had that thought, too. I had many thoughts." *Id.* at 1897. She later explained that when Arntsen got out of his car, she was afraid he was going to shoot her, though by the time he got close to her, she believed "he was not looking to shoot me, he did . . . not raise the gun like, you know, he wanted to shoot me. He had something else in mind. I have no idea what it was. I still don't know what it was." *Id.* at 1901.

2.    *Morrill Testimony*

Robert Morrill was also driving down Auburn Way on the morning of December 1, 2014, when he saw a car stopped and angled into both the center and the left-hand lane, "like it had been cut off," and an older model Jaguar in front of it. 25 VRP (Oct. 26, 2016) at 1686. Morrill testified that as he approached, he watched a man (who we now know was Arntsen), who "looked like he was like in a

fit of rage," jump out of the Jaguar with a machine gun in his hand. *Id.* at 1687. Morrill said the man "held [the gun] up in his hand and he went to approach the car that it appeared that he [had] cut off." *Id.* at 1687-88. Morrill described the way the man carried the gun:

> [H]e had it in his hand like a sign of intimidation. And so whoever that person was in the car that he had cut off, he wanted everybody to know he had a gun. I mean, that's the way I perceived it to be. And at that moment, you're saying, Uh-oh, something's going to happen here.

*Id.* at 1688-89. Morrill recognized the weapon as an AK-47 assault rifle.

According to Morrill, Arntsen ran to the driver's side of the other car "like he was going to shoot" the person in the car. *Id.* at 1689. Morrill testified that when Arntsen approached the car, he changed the position of the gun from a lifted position down to his waist. He never saw Arntsen actually point the gun at Koenig. He recalled that Arntsen ran toward Koenig's car and then ran back to his own car and took off at high speed.

Morrill also described Arntsen as "a pretty good sized [B]lack man," "every bit of six-two, . . . maybe six-three. He was a big guy." *Id.* He also described his clothing, hoodie, and sunglasses as making Arntsen look "like a bank robber" trying to disguise his face, and he said Arntsen acted "[a]ggressive. Scary aggressive." *Id.* at 1689, 1695.

5

3. *Verdict*

Arntsen was charged with felony harassment and second degree assault with a deadly weapon for the Koenig incident. For the assault charge, the jury instructions included the elements of second degree assault, the required specific intent to create apprehension and fear of bodily injury, and the information that a firearm is a deadly weapon. The jury was also instructed on the lesser offense of unlawful display of a firearm.

The jury returned a verdict of not guilty as to felony harassment, but guilty as to second degree assault with a deadly weapon. It also found Arntsen guilty on all other counts.

B. Procedural History

Arntsen appealed, and the Court of Appeals reversed the Big 5 malicious mischief conviction (unrelated to the Koenig incident) but affirmed as to all other counts. We denied review, and the judgment and sentence became final in 2021.

Arntsen filed a pro se motion for relief from judgment in superior court in 2021. He challenged only the sufficiency of the evidence for the Koenig assault, arguing the State failed to prove that (1) Arntsen had the specific intent required for second degree assault, given that the testimony showed he did not point the gun at another person, (2) Koenig in fact experienced apprehension and imminent fear of bodily injury, and (3) the "Kim Koenig" who testified was the same person as the

6

"Kim Weyer Koenig," complaining witness. PRP (No. 83075-9 Wash. Ct. App. Sept. 2, 2021) at 188-92. Arntsen also argued the conviction violated equal protection because he, a Black man, was treated differently from armed white people who stormed the Washington Governor's Mansion following the riot at the United States Capitol on January 6, 2021. *Id.* at 221-28.

The motion was transferred to the Court of Appeals for consideration as a timely PRP. CrR 7.8(c)(2). In a published decision, the Court of Appeals granted the PRP, reversing the second degree assault conviction. *In re Pers. Restraint of Arntsen*, 25 Wn. App. 2d 102, 105, 522 P.3d 135 (2023). The court determined that the actual innocence doctrine applied before reaching the merits of Arntsen's petition, where it concluded the evidence did not establish that Arntsen had the requisite specific intent or that he did in fact create an imminent fear of bodily injury. *Id.* at 105, 109-10, 118. The court did not reach Arntsen's other claims regarding proof of the victim's full name or equal protection. *Id.* at 119. We granted review.

ANALYSIS

In this PRP, Arntsen claims primarily that the conviction for second degree assault was not supported by sufficient evidence as to the defendant's specific intent to create the victim's actual apprehension and fear.[2] The State has the burden to

---

[2] Before analyzing the merits of Arntsen's sufficiency claim, the State asks us to address what it describes as an incompatibility between the actual innocence doctrine and a challenge to the sufficiency of the evidence. The actual innocence doctrine is a "'narrow exception'" to avoid

prove every essential element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). In a challenge to the sufficiency of the evidence, the test "is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). We draw all reasonable inferences from the evidence in favor of the State and against the defendant. *Salinas*, 119 Wn.2d at 201; *see also State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007) ("A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it."). "Direct evidence is not required to uphold a jury's verdict; circumstantial evidence can be sufficient." *O'Neal*, 159 Wn.2d at 506. This standard of review "is highly deferential to the jury's decision, and we do not consider 'questions of credibility, persuasiveness, and conflicting testimony.'" *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (quoting *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011)) (plurality opinion).

Arntsen was convicted of second degree assault with a deadly weapon (the firearm, not the car). *See* RCW 9A.36.021(1)(c). We have recognized two common

---

"procedural bars in cases where a fundamental miscarriage of justice would otherwise result if the collateral attack is dismissed"—but it is inapplicable here. *In re Pers. Restraint of Carter*, 172 Wn.2d 917, 923, 263 P.3d 1241 (2011) (quoting *Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004)). No party raised the issue of actual innocence below, and all agree there is no procedural barrier to reaching the merits of Arntsen's claims as Arntsen's PRP is neither untimely nor successive. Thus, we decline to address the issue of actual innocence.

law definitions of assault: first, an attempt to cause bodily injury by unlawful force, and second, an attempt to cause fear and apprehension of such an injury. *See, e.g.*, *Byrd*, 125 Wn.2d at 712-13. Arntsen was convicted under the latter definition. "Under this definition, the State must prove the Defendant acted with an intent to create in [their] victim's mind a reasonable apprehension of harm." *Id*. at 713. In other words, "[a]ssault by attempt to cause fear and apprehension of injury requires specific intent to create reasonable fear and apprehension of bodily injury." *State v. Eastmond*, 129 Wn.2d 497, 500, 919 P.2d 577 (1996) (effectively overruled on other grounds by *State v. Brown*, 147 Wn.2d 330, 340, 58 P.3d 889 (2002)). Here, the jury was instructed, "An assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." 2 Clerk's Papers (CP) at 715; *accord Byrd*, 125 Wn.2d at 712-13. All agree that the jury instruction given at Arntsen's trial provided a complete and accurate statement of the law, including the specific intent to create an apprehension of harm.

The jury was also instructed on the lesser offense of unlawful display of a firearm, which comprises exhibiting or displaying a firearm in a way "that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." RCW 9.41.270(1); 2 CP at 722-24. Arntsen emphasizes that both Koenig

9

and Morrill testified they did not see him point the firearm directly at another person. He argues, and the Court of Appeals agreed, that with this evidence, the jury could have found *only* intent to intimidate for unlawful display. Absent evidence he pointed the rifle directly at another person, he contends, the jury could not have found the intent to create apprehension and fear of injury, as required for assault. The Court of Appeals also concluded there was insufficient evidence that Koenig actually experienced fear and apprehension bodily injury.

The State argues the Court of Appeals erred as to both elements. We agree with the State and reverse.

A.     Specific Intent

The sufficiency of the evidence analysis "is highly deferential to the jury's decision" and requires courts to view the evidence and all reasonable inferences in favor of the State. *Davis*, 182 Wn.2d at 227; *see also Salinas*, 119 Wn.2d at 201; *O'Neal*, 159 Wn.2d at 505. Moreover, specific intent "may be inferred from the conduct where it is plainly indicated as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Here, sufficient evidence existed for the jury to find that Arntsen intended to cause apprehension of harm. The State's evidence showed that in response to Koenig changing lanes, Arntsen approached her with his AK-47 after swerving and nearly colliding with her car and forcing her to an abrupt stop in the middle of the

road. Although he did not point the rifle directly at Koenig, the jury could infer from Koenig's and Morrill's testimony that he intended to make her fear he might harm her with it. Koenig testified that Arntsen's driving and approach with the rifle indicated he might shoot her, assault her, or steal her car. Her testimony would support an inference that he intended something menacing: "[A person who] does something like that after being so angry is clearly not, you know, pulling a prank or doing anything fun. This was a lethal weapon that he was holding and he was coming at me." 26 VRP (Oct. 27, 2016) at 1880. And, she thought Arntsen must have had the rifle in order to use it, either to shoot her or to harm her in some other way. Morrill also testified that Arntsen held the AK-47 "like a sign of intimidation . . . he wanted everybody to know that he had a gun," and when he ran over to Koenig's car it was "like he was going to shoot" her. 25 VRP (Oct. 26, 2016) at 1688-89.

Taking the evidence together and all reasonable inferences in favor of the State, as required in a sufficiency review, a rational trier of fact could infer from this conduct that Arntsen became angered at Koenig's driving, so he stopped both cars, took out his AK-47, and approached her car with the gun in order to create fear and apprehension that he would harm her with it. *See Salinas*, 119 Wn.2d at 201; *Delmarter*, 94 Wn.2d at 638.

11

Arntsen argues that the evidence is insufficient because intent to cause apprehension of harm can never be inferred unless there is evidence he pointed the gun at Koenig. *See State v. Ward*, 125 Wn. App. 243, 248, 104 P.3d 670 (2004) (a jury must be instructed on intent to create reasonable fear and apprehension of bodily injury because "[s]uch intent may be inferred from pointing a gun, but not from mere display of a gun" (citing *Eastmond*, 129 Wn.2d at 500)). He argues that under *Byrd* and *Eastmond*, displaying a weapon while engaging in menacing behavior demonstrates intent only to intimidate another—intent for unlawful display—but not intent to create apprehension of harm, as required for second degree assault. He is incorrect. Those decisions regarding instructional error do not control our sufficiency of the evidence analysis.

We have previously held that failure to instruct a jury on this specific intent for second degree assault is manifest error because it relieves the State of the burden to prove an essential element of the offense. *Byrd*, 125 Wn.2d at 714; *Eastmond*, 129 Wn.2d at 499. In *Byrd*, the jury heard conflicting testimony about whether the defendant put a gun to the victim's head and threatened him or only held the gun in the air and warned him. 125 Wn.2d at 709-10. At trial, the jury was instructed that second degree assault requires only "'an intentional act,'" but not intent to cause apprehension of harm. *Id.* at 710 (quoting the record). The conviction was reversed because, absent a specific intent instruction, "the jury may not have understood it

must acquit Byrd of second degree assault if it failed to find he intended to create present apprehension . . . because an essential element would not have been proved." *Id.* at 715. Similarly, in *Eastmond*, the jury instructions addressed only an intentional act and there was conflicting testimony about whether the defendant held his gun or "pointed [it] menacingly" at the victim. 129 Wn.2d at 499. We again reversed because omitting "a specific intent instruction impermissibly allowed the jury to find the defendant guilty of second degree assault on the mere basis of his intentional drawing of the gun, a physical act he admitted, without finding any actual intent to injure or cause fear." *Id.* at 503.

In both cases, the *instructional error* permitted the jury to return a guilty verdict for second degree assault even if it did not find the requisite intent. *Byrd*, 125 Wn.2d at 716; *Eastmond*, 129 Wn.2d at 503. But those instructional error cases are inapposite here, where the jury received a proper instruction that assault requires intent to create apprehension of harm. *See O'Neal*, 159 Wn.2d at 504 (limiting the inquiry to the sufficiency of the evidence when there has been no challenge to the jury instructions). The error in *Byrd* and in *Eastmond* was not that evidence would be insufficient if the State failed to prove the defendant pointed their gun; rather, the error was that the jury instructions failed to inform the jury about the essential element of specific intent *at all*. *Byrd*, 125 Wn.2d at 716; *Eastmond*, 129 Wn.2d at 503. Without such an instruction, the jury could have convicted the defendant of

13

assault even if they did not infer the specific intent, relieving the State of its burden to prove that essential element. *Eastmond*, 129 Wn.2d at 504. A specific intent instruction—such as the one given in Arntsen's trial—would have resolved that error.

An error of insufficient evidence is distinct from an instructional error. A challenge to the sufficiency of the evidence asks whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. A challenge based on jury instructions, on the other hand, considers whether the jury was informed of all the elements that the State bears the burden of proving. *Byrd*, 125 Wn.2d at 714. When a jury has not been instructed that it must find intent to cause apprehension of harm in order to convict, it cannot infer that intent from the "mere display" of a firearm because it has no guidance on what intent is required. *Eastmond*, 129 Wn.2d at 500. But when the jury *has been* properly instructed that it must find intent to cause apprehension of harm, it may infer that intent from the totality of the circumstances. We presume that jurors follow the instructions given by the court, and there is no indication to the contrary here. *State v. Weaver*, 198 Wn.2d 459, 467, 496 P.3d 1183 (2021).

While Washington courts have often recognized that pointing a gun is sufficient to show specific intent for assault, we have never held that it is necessary.

14

*See State v. Karp*, 69 Wn. App. 369, 374, 848 P.2d 1304 (1993) ("second degree assault is committed when, within shooting distance, one points a loaded gun at another"); *State v. Murphy*, 7 Wn. App. 505, 511-12, 500 P.2d 1276 (1972). We decline to do so now. Instead, we adhere to the sufficiency of the evidence standard, which requires us to consider the evidence together with all reasonable inferences to determine whether a rational trier of fact could infer that intent "from the conduct where it is plainly indicated as a matter of logical probability." *Delmarter*, 94 Wn.2d at 638; *Salinas*, 119 Wn.2d at 201. Here, a rational trier of fact could find the State proved the requisite intent based on Arntsen approaching and circling Koenig's car with the rifle after angrily forcing her to stop in the middle of the road. His behavior before he stopped her car was also menacing and evinced rage, which carried through the entire incident as he circled the car, holding the rifle.

The State also argues the Court of Appeals erred in considering that "unconscious bias [could] creep into the process" because "[w]ithout any evidence as to what Arntsen said, the jury is left with what he did and what he looked like." *Arntsen*, 25 Wn. App. 2d at 117-18. The court was correct that unconscious bias could be triggered by Morrill's descriptions of Arntsen as a "[s]cary aggressive," "pretty good sized [B]lack man." 25 VRP (Oct. 26, 2016) at 1695, 1689; *see* John Paul Wilson et al., *Racial Bias in Judgments of Physical Size and Formidability: From Size to Threat*, 113 J. PERSONALITY & SOC. PSYCH. 59, 60 (2017) (finding

evidence of negative stereotypes that Black men are threatening or aggressive), https://www.apa.org/pubs/journals/releases/psp-pspi0000092.pdf [https://perma.cc/MJ3P-UK28]; Mark W. Bennett & Victoria C. Plaut, *Looking Criminal and the Presumption of Dangerousness: Afrocentric Facial Features, Skin Tone, and Criminal Justice*, 51 U.C. DAVIS L. REV. 745, 796-802 (2018) (recommending methods of combating the effect of this false and negative bias in the criminal legal system). *See generally* Suppl. Br. of Resp't at 19-22 (citing studies). But the conduct described by the witnesses here would be sufficient evidence of second degree assault, regardless of the appearance of the actor. Nothing in the case shows that the witnesses' descriptions of Arntsen impacted the jury in a manner that would result in an unjust verdict.

We decline to adopt Arntsen's proposed bright line rule that evidence is insufficient to prove specific intent to cause apprehension and fear of injury unless the gun is pointed at the victim. Instead, sufficiency of the evidence analysis requires us to consider the evidence together with all reasonable inferences to determine whether a rational trier of fact could infer that intent "from the conduct where it is plainly indicated as a matter of logical probability." *Delmarter*, 94 Wn.2d at 638; *Salinas*, 119 Wn.2d at 201. Here, a rational trier of fact could find the State proved the requisite intent based on Arntsen approaching and circling Koenig's car with an

16

AK-47 after angrily forcing her to stop in the middle of the road. The evidence was sufficient to prove intent.

B.     Actual Apprehension and Imminent Fear

Last, Arntsen argues there was insufficient evidence that Koenig experienced fear in fact. "[F]ear is a necessary element of assault by attempt to cause fear." *Eastmond*, 129 Wn.2d at 504 (citing *Byrd*, 125 Wn.2d at 712-13). The Court of Appeals concluded the State failed to prove Arntsen in fact created apprehension and fear of injury in Koenig in light of her testimony that she did not know what type of harm he meant her, and that by the time he reached her car, she thought he "was not looking to shoot" her. 26 VRP (Oct. 27, 2016) at 1901.

This is an incomplete reading of the facts. Koenig testified that her "first thought" when she saw Arntsen approaching her with the rifle was, "I'm going to get shot." *Id.* at 1881. She also testified that she thought he could have shot her from a distance when he first exited his own car, but the fact that "he didn't shoot me immediately doesn't mean that he wasn't going to do something to me and then shoot me." *Id.* at 1900. Though Koenig may have eventually believed that Arntsen was not going to shoot her, she testified unequivocally that at times during this incident, she believed he was going to shoot her or harm her in some way. Koenig's testimony was sufficient evidence she experienced actual apprehension and fear of injury. *Cf. State v. Abuan*, 161 Wn. App. 135, 159, 257 P.3d 1 (2011) (insufficient

17

evidence of fear in fact when the defendant shot outside a house and victim was inside and could not see any shooting). Viewing the evidence in the light most favorable to the State, Koenig's testimony would permit a rational trier of fact to believe she experienced actual apprehension and fear of injury because during parts of this encounter, she believed Arntsen would shoot her or harm her.

Sufficient evidence supported the jury's finding that Arntsen intended to create apprehension and fear of injury and that Koenig actually experienced such apprehension and fear. Therefore, we reverse.

CONCLUSION

We decline to conclude that evidence that the defendant pointed a gun at the victim is required to prove specific intent for second degree assault when there is no instructional error and other evidence of the defendant's conduct permits a rational trier of fact to infer intent to cause apprehension and fear of injury. Here, there was sufficient evidence of the elements of specific intent and actual apprehension and imminent fear to convict Arntsen of second degree assault. We reverse and remand to the Court of Appeals to address the other issues raised in Arntsen's PRP. RAP 13.7(b).

18

_____
Montoya-Lewis, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Whitener, J.